

FILED & JUDGMENT ENTERED
Steven T. Salata

May  1  2017

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_Laura T Beyer_
Laura T. Beyer
United States Bankruptcy Judge

In the United States Bankruptcy Court
Western District of North Carolina
Statesville Division

| | | |
|---|---|---|
| In re: | § § § | Cause No. 15-50754 |
| Claudia Faye Mason<br>Fdba Mason & Mason Consultants, Inc., | § § § § | Chapter 7 |
| Debtor. | § | |

| | | |
|---|---|---|
| Vector Aerospace Engine Services-<br>Atlantic, Inc., a Canadian Corporation, | § § § | |
| Plaintiff, | § § | |
| v. | § § § | Adv. No. 16-05002 |
| Claudia Faye Mason, | § § | |
| Defendant. | § | |

## Order Granting Summary Judgment

This matter came on for hearing on January 6, 2017 in Statesville, North Carolina on the

Amended Motion for Summary Judgment of Plaintiff Vector Aerospace Engine Services-

Atlantic, Inc. ("Vector") against the Defendant Claudia Faye Mason ("Mason"). Present at the

hearing were Jameson P. Wells on behalf of Vector and Mason on behalf of herself. The Court

took the matter under advisement and continued the hearing to February 1, 2017 in Charlotte,

North Carolina, where it announced its ruling.

The Court has reviewed the pleadings, the exhibits thereto, the affidavits and declarations, including the affidavit of Mason and the declarations submitted by Vector, and other matters of record in this adversary proceeding. Based on its consideration of the same, as well as the arguments made by Wells and Mason at the hearing, the Court has determined that there are no issues of material fact and that Vector's Amended Motion for Summary Judgment should be, and the same hereby is, GRANTED. The granting of Vector's Amended Motion for Summary Judgment disposes of all issues in this adversary proceeding.

## FACTS

### A. Background

Prior to the transactions that gave rise to this case, Vector employed the services of Mason from time to time to collect delinquent accounts. Mason conducted business in her personal capacity as "Mason & Mason Consultants, Inc.," "Mason & Mason Consultants," and "Mason & Mason." In 2012, Vector hired Mason to collect sums owed to Vector by American Care Air, Inc. ("American Care"). Mason arranged for Vector to retain the Law Offices of Philip Landsman, a California law firm, ("Landsman Firm") and specifically attorney Philip Landsman ("Attorney Landsman") to assist with the American Care account. While Mason did not sign Vector's retention agreement with the Landsman Firm, she largely communicated with the Landsman Firm on Vector's behalf. In fact, the retention agreement designated Mason as Vector's authorized representative.

Vector agreed in the retention agreement that the Landsman Firm would receive 25% of all gross amounts collected as compensation. Although there was no formal written agreement regarding Mason's compensation, the parties agreed that any amounts tendered on behalf of American Care would first be sent to Attorney Landsman, who would deduct his fee and send the net amount to Mason, who would then deduct her fee and send the remainder to Vector. In

light of the Landsman Firm's retention, Mason agreed that her usual fee of 25% would be reduced to 15%.

In July 2012, the Landsman Firm filed a lawsuit against American Care on behalf of Vector. In early 2013, Attorney Landsman negotiated a settlement of that lawsuit where American Care agreed to pay $1,500.00 per month for six months, with escalating payments from there, totaling approximately $80,000.00. American Care initially made six $1,500.00 payments to the Landsman Firm via check. Attorney Landsman handled these payments by depositing the funds into the Landsman Firm's trust account, deducting its contractual 25%, preparing a letter and check for the net amount, and sending the same to Mason. The Landsman Firm sent six checks in the amount of $1,125.00 to Mason with accompanying letters from June to October of 2013.

B.  **Mason's Receipt of Amounts Owed to Vector**

On or after June 4, 2013, Mason received the first payment from the Landsman Firm and deposited the check for $1,125.00 into her bank account. Mason then obtained a cashier's check for $956.25 after deducting a 15% commission from the $1,125.00 received from the Landsman Firm and sent the cashier's check to Vector on or about June 11, 2013. Mason handled the next four monthly payments in the same way, sending a total of five payments to Vector from June to October 2013. These payments were also accompanied by letters signed by Mason that described a $1,500.00 payment being tendered by American Care, a $375.00 deduction for the Landsman Firm's fee (25% of the $1,500.00 received by the Landsman Firm), a $168.75 deduction for Mason's fee (15% of the $1,125.00 received by Mason),[1] and a $956.25 net remittance to Vector.

---

[1] As noted above, the letters accompanying the first five payments sent by Mason from June to October of 2013 all listed $168.75 as being deducted for Mason's services. While the letters for the payments sent on or around June 11 and June 25 of 2013 had "15%" listed next to the $168.75 deducted for Mason's share, the letters for the payments sent in August, September, and October of 2013 had "25%" listed next to the $168.75 deducted for Mason.

While the first five payments received by Mason were tendered to Vector without controversy, the same cannot be said of subsequent payments. Mason received the sixth payment of $1,125.00 from the Landsman Firm on or around October 30, 2013, and Mason deposited the check into her bank account. However, Mason did not remit the sixth payment to Vector as she had done with the previous five payments, and she did not notify Vector of her receipt of this payment.

Meanwhile, Attorney Landsman negotiated an accord and satisfaction in the fall of 2013 whereby American Care made one final payment to complete its obligation to Vector. American Care paid $71,480.00 to the Landsman Firm via wire transfer, and the Landsman Firm handled this final payment as it had the other payments, deducting its 25% fee and remitting the net amount to Mason. On or after December 21, 2013, Attorney Landsman sent a check in the amount of $53,610.00 to Mason along with a letter that advised the $71,480.00 from American Care was a payment in full, the case was closed, and Attorney Landsman would be taking no further action against American Care.

Mason deposited the $53,610.00 into her bank account, and, as was the case with the sixth payment of $1,125.00, Mason did not remit to Vector its share of the $53,610.00 or inform Vector of the receipt of the funds. As of January 2014, Mason had deposited $54,735.00 into her bank account without Vector's knowledge between her receipt of the sixth payment of $1,125.00 and the seventh payment of $53,610.00.

C. **Mason's Correspondence with and Limited Payments to Vector**

On January 10, 2014, Vector employee Roxanne Delaney ("Delaney") e-mailed Mason to inquire about the status of the American Care account. In her message, Delaney noted that

---

However, in subsequent correspondence between Mason and Vector in January of 2014, Mason confirmed that the 25% notation was a mistake.

Vector had not received a payment since November of 2013 and that it appeared American Care was in default of the settlement agreement. After waiting four days, Mason responded to Delaney's e-mail on January 14, 2014. Mason and Delaney then corresponded through e-mail several times between January 14 and 15 of 2014. Over the course of this correspondence, Mason would consistently provide statements that misrepresented her receipt of funds payable to Vector.[2]

Instead of disclosing the receipt of the sixth and seventh payments, Mason stated in a January 14, 2014 e-mail that American Care was "going out of business" but "there [were] a couple payments forthcoming." Mason also asserted in the same e-mail that "[Attorney Landsman] [was] well aware of this and [was] scrambling to do all within legal limitations to secure monies owed" and that she would know more by the following Friday. Mason concluded her e-mail by saying: "Please keep your fingers crossed and hope my office can manage something in your favor." Later on January 14, 2014, Delaney e-mailed Mason again about a new Vector customer, a company referred to as "Reva." Delaney reported to Mason that Reva had brought Vector an engine that Vector had previously serviced for American Care. Vector believed that Reva and American Care were somehow related, so Vector was in the process of contacting Reva regarding the unpaid American Care account. Mason responded to Delaney again on January 14, 2014 and indicated that she would call Attorney Landsman.

Despite what was indicated in Mason's January 14, 2014 correspondence with Delaney, Attorney Landsman had already advised Mason in his December 2013 letter that no further payments would be coming from American Care and that a final payment had been made.

---

[2] In her responses to Vector's request for admission, Mason stated that she did not "remember clearly" the e-mail correspondence from January 2014 between her and Delaney. However, Mason has not affirmatively denied that she sent the e-mails, and the court sees no reason to doubt their authenticity.

Indeed, Mason had deposited the sixth payment of $1,125.00 and the seventh payment of $53,610.00 into her bank account.

Although she had already received the sixth and seventh payment from Attorney Landsman, Mason e-mailed Delaney on January 15, 2014, claiming that she had just received payment directly from American Care. Mason's e-mail also understated the amounts she had actually received, as her e-mail provided: "Good news also; yesterday afternoon, my office received 1500$ [sic] payment for Sept 2013 up until Jan 2014=total 7500.00 . . . ." Unaware that Mason had received the sixth payment and seventh payment, Delaney considered that perhaps the Landsman Firm and Attorney Landsman were withholding the funds. Delaney e-mailed Mason again on January 15, 2014 to indicate that she had been provided with proof that over $71,000.00 had been paid on behalf of American Care. Mason responded on January 15, 2014, maintaining that Attorney Landsman had informed her that the $71,480.00 check would not clear and that he was wiring the funds to her. Mason claimed that Attorney Landsman did not tell Mason or Vector about the payment because he did not want to "get hopes up until it was good funds."  Mason also stated that "[t]his is all they can pay…and are closing or have closed their doors." However, as already noted, the $71,480.00 was wired to Attorney Landsman, so no check needed to clear. More importantly, at the time of Mason's correspondence on January 15, 2014, Attorney Landsman had mailed checks to Mason for the sixth and seventh payments, and Mason had deposited these checks into her bank account.

Still unaware of Mason's receipt of the sixth and seventh payments, Delaney continued to suspect that Attorney Landsman was withholding the funds, as Delaney stated in another e-mail on January 15, 2014 that she was "still unsure of why he waited to advise and do feel uneasy about it taking a month." Mason, however, did not disclose her receipt of the sixth and seventh payment. Instead, about a week after Mason and Delaney's correspondence on January 14 and 15

6

of 2014, Vector received a cashier's check from Mason in the amount of $36,995.00 dated January 15, 2014. Unlike other checks Mason sent, the check dated January 15, 2014 was not accompanied by any letter explaining how the amount was calculated, and the check did not appear to be related to amounts received for the American Care account. Vector deposited the $36,995.00 check, only to learn that payment on the check had been stopped.

Thereafter, Vector received from Mason a check for $6,375.00 dated January 29, 2014, a check for $1,275.00 dated March 10, 2014, and another check for $1,275.00 dated April 11, 2014. Each of these checks was accompanied by a letter that indicated Mason had received the funds from American Care directly, not Attorney Landsman. While these checks cleared, Mason never informed Vector that she had received a sixth payment of $1,125.00 and a seventh payment of $53,610.00. As of December 31, 2013, Mason had received a total of $60,360.00 from the Landsman Firm, of which $51,306.00 was owed to Vector. Vector was only paid $13,706.25 of that amount. Thus, Vector contends that Mason unlawfully misappropriated $37,599.75.

### D. Mason's Position

Mason stated in her affidavit that she "thought it best to stick to the oral contract with Vector vs. sending them payment in full," and she admits "this was obviously a bad decision (among many others)." Despite acknowledging some wrongdoing, Mason construes her actions as a breach of contract, not an attempt to deceive Vector. Mason also alludes to her past health, familial, and substance abuse problems, indicating that she was not in her right mind during the transactions that gave rise to the complaint. Calling into question Vector's assertion of $37,599.75 for actual damages,[3] Mason contends that her 15% fee should be based on the total

---

[3] Pursuant to the Court's own calculations, Vector would be owed $34,581.75 if Mason's approach for calculating her commission was employed, which would be $3,018.00 less than the $37,599.75 claimed by Vector.

amounts tendered by American Care, not 15% of the net amount sent to her by Attorney Landsman as Vector asserts. At the same time, Mason admits to (i) agreeing to receive funds payable to Vector; (ii) actually receiving funds payable to Vector; (iii) sending Vector five checks for $956.25 accompanied by letters signed by Mason that listed a $375.00 deduction for the Landsman Firm and a $168.75 deduction for herself; (iv) depositing a sixth payment for $1,125.00 into her bank account; (v) depositing a seventh payment for $53,610.00 into her bank account; (vi) not advising Vector of her receipt and deposit of the sixth and seventh payments; and (vii) not tendering the full amounts owed to Vector.

**STANDARD FOR SUMMARY JUDGMENT**

The standard for summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure, which is made applicable to this proceeding by FED. R. BANKR. P. 7056. Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting prior version of FED. R. CIV. P. 56). In considering a motion for summary judgment, the Court must construe the "facts and inferences drawn therefrom in the light most favorable to the non-moving party." Seabulk Offshore, Ltd. v. Am. Home Assurance Co., 377 F.3d 408, 418 (4th Cir. 2004) (citing Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir. 2001)). Vector's Amended Motion for Summary Judgment seeks relief in relation to various claims, each of which is addressed below.

**CONCLUSIONS OF LAW**

A. **Claim for Embezzlement**

Vector claims that Mason is liable for embezzlement pursuant to N.C. GEN. STAT. § 1-538.2, which employs the elements for embezzlement provided by N.C. GEN. STAT. § 14-90, a criminal statute. While liability under § 1-538.2 defers to a criminal statute, it is important to note that, for purposes of North Carolina law, "a civil action containing an issue including a criminal charge" need only be proven by "a preponderance of the evidence or by its greater weight." Nat'l Shirt & Hat Shops of the Carolinas, Inc. v. Am. Motorists Ins. Co., 234 N.C. 698, 68 S.E.2d 824, 829 (1952) (citations omitted). Indeed, § 1-538.2 has been treated as a civil action without any explicit requirement of a burden of proof higher than the preponderance of the evidence standard. See Artistic S. Inc. v. Lund, No. 12 CVS 11789, 2015 WL 8476587, at *18–19 (N.C. Super. Ct. Dec. 9, 2015) (unpublished) (granting the plaintiff's motion for summary judgment as to a claim for embezzlement under § 1-538.2 without discussing a burden of proof higher than preponderance of the evidence). Accordingly, Vector need only establish the elements set forth under § 14-90 by a preponderance of the evidence for the purposes of § 1-538.2.

As for the elements for embezzlement for Vector's claim, they are that (i) the defendant is a person under § 14-90; (ii) the defendant " 'received money or valuable property of his principal in the course of his employment and by virtue of his fiduciary relationship' "; and (iii) the defendant " 'fraudulently or knowingly misapplied . . . such money or valuable property of his principal which he had received in his fiduciary capacity.' " State v. Parker, 233 N.C. App. 577, 756 S.E.2d 122, 124 (2014) (quoting State v. Rupe, 109 N.C. App. 601, 428 S.E.2d 480, 485 (1993)). Further, it need not be shown that "the agent converted his principal's property to the agent's own use, only that the agent fraudulently or knowingly and willfully misapplied it, or

9

that the agent intended to fraudulently or knowingly and willfully misapply it." Id. at 124–25 (citation omitted). Lastly, the intent required for embezzlement may be shown though direct or circumstantial evidence. Id. at 124 (citation omitted).

The definition of "person" under § 14-90 includes a "trustee, or any receiver, or any other fiduciary" as well as an "officer or agent of a corporation, or any agent, consignee, clerk, bailee or servant." Notably, " [a]n agent is one who, by the authority of another, undertakes to transact some business . . . and to render an account of it," and an "agreement to collect funds for a party[] and remit those funds less a commission is sufficient to establish an agency relationship for purposes of N.C. GEN. STAT § 14-90." State v. Newell, 189 N.C. App. 138, 657 S.E.2d 40, 403 (2008) (first quoting SNML Corp. v. Bank of N.C., N.A., 41 N.C. App. 28, 254 S.E.2d 274, 279, *disc. review denied*, 298 N.C. 204 (1979); and then citing State v. McCaskill, 47 N.C. App. 289, 267 S.E.2d 331, 333 (1980)). Mason has offered statements that purport to distance herself from Vector, maintaining that she was merely acting as a mediator and that she generally did not handle funds owed to her clients. At the same time, Mason admits that (i) she was retained to help negotiate the recovery of a delinquent debt owed to Vector and was to be paid based off a percentage of the amounts recovered; (ii) she arranged for Vector to retain the Landsman Firm to collect on the debt owed by American Care; (iii) she communicated with the Landsman Firm on behalf of Vector; and (iv) she actually deducted amounts owed to her from funds she received that were recovered from American Care and payable to Vector. In addition, Mason was named Vector's authorized representative in its retention agreement with the Landsman Firm. Notwithstanding the label that Mason gives herself, the record establishes that Mason was Vector's agent for purposes of collecting on the American Care account. Mason, therefore, is a "person" whose conduct is subject to § 14-90.

Mason received funds owed to Vector in her capacity as Vector's agent. Other then the commission owed to her, the amounts Mason received from the Landsman Firm were Vector's property, and the ultimate remittance of Vector's property to Vector was not subject to her discretion. Mason's stated intention to pay Vector in full does not change the fact that Mason failed to pay Vector while being aware of her receipt of amounts owed to Vector. While it need not be shown that Mason used the funds for her own benefit, Mason impliedly admits that she used the funds payable to Vector for her personal living expenses,[4] and she has not claimed that she preserved the funds for Vector.

Mason could have advised Vector of her receipt of the $54,735.00, but, by her own admission, she did not. In fact, Mason's concealment went beyond the failure to disclose as evidenced by her e-mail correspondence with Delaney. On January 14, 2014, Delaney directly asked Mason about the status of the remaining payments from American Care, and Mason falsely stated that she was waiting for the last set of payments despite having deposited $1,125.00 from the sixth payment and $53,610.00 from the seventh and final payment into her bank account. Then, on January 15, 2014, Mason continued to misrepresent the amounts she had received by claiming she had only received a total of $7,500.00 since November 2013. Mason only acknowledged that a larger payment had been made when Delaney stated that she had proof that over $71,000.00 had been paid on American Care's behalf, but Mason still did not disclose the truth: she had deposited $54,735.00 into her bank account from the combined amount of the sixth and seventh payments.

---

[4] In her affidavit, Mason states that she believed it would be acceptable to use the funds payable to Vector for her own purposes as long as she ultimately made periodic payments to Vector, as she "figured as long as [she] sent Vector Aerospace a monthly payment all would be well." Mason goes on to say that she was "literally not paying [her] rent or able to afford groceries" and that not paying Vector "was simply a last ditch effort to keep . . . [her] business going so [she] could get back on track, and not only pay Vector Aerospace the balance due them but also to begin to earn a living again."

Mason's descriptions of her substance abuse and other personal problems fail to show that she should be excused from liability in this adversary proceeding, especially considering the timespan surrounding her actions. Mason's conduct that gave rise to this situation started on or around October 30, 2013 when she failed to send the sixth payment to Vector or advise Vector of its receipt, and her transgressions persisted to at least January of 2014 when she continued to conceal the receipt of amounts owed to Vector. Mason has floated the possibility, but not definitively claimed, that she could have been "blacked out" this entire time. However, Mason has not produced any medical records or other evidence that confirms she was wholly unaware of her actions during that time period, and it would be unreasonable to reach such a conclusion based on what is apparent from the record. Notably, Mason's e-mail correspondence from January 2014 is coherent, and it shows her comprehension of her role in aiding Vector's collection efforts, as she never questioned being accountable to Vector. In sum, Mason's general assertions regarding her mental health are an insufficient basis for the court to ignore her own admissions and other evidence that shows Mason knowingly and willfully (if not fraudulently) misapplied the funds owed to Vector while in possession of these funds in her capacity as Vector's agent. Accordingly, the Court concludes that Mason's conduct satisfies the elements for embezzlement under § 14-90 as referenced in § 1-538.2.

## B. Claim for Breach of Fiduciary Duty

A claim for breach of fiduciary duty has three elements: existence of a fiduciary duty, breach of the duty, and an injury caused by the breach. See Green v. Freeman, 367 N.C. 136, 749 S.E.2d 262, 268 (2013) ("The first issue before us is whether there was sufficient evidence, as a matter of law, that Corinna breached a fiduciary duty owed to plaintiffs, proximately causing injury to them."). In relation to the first element, the legal relationship between agent and principal gives rise to fiduciary duties, Centurion Constr. Co. v. RBC Real Estate Fin., Inc. (In re

12

Shearin Family Invs., LLC), 418 B.R. 870, 875 (Bankr. E.D.N.C. 2009) (citation omitted);

Abbitt v. Gregory, 201 N.C. 577, 160 S.E. 896, 906 (1931) (citation omitted), and the Court has

already found that Mason was Vector's agent for purposes of collecting the debt from American

Care. As for the second element, Mason had a duty to turn over funds payable to Vector and to

make truthful statements regarding her receipt of the funds. Instead, Mason concealed her receipt

of the funds and did not turn them over to Vector. Therefore, Mason breached her fiduciary duty

to Vector. Lastly, as to whether the breach of duty served as the proximate cause of the injury,

Mason's failure to turn over the funds resulted in Vector's pecuniary loss. If Mason had at least

made truthful representations to Vector when asked about the funds, Vector could have taken

steps to secure the amounts owed to it that were in Mason's possession. Thus, the Court

concludes that Vector has established the elements of the claim for breach of fiduciary duty.

## C.  Claim under N.C. GEN. STAT. § 75-1.1

In order to prevail on its claim under N.C. GEN. STAT. § 75-1.1, Vector must establish

that "(1) [Mason] committed an unfair or deceptive act or practice, (2) in or affecting commerce

and (3) [Vector] was injured as a result." Reid Pointe, LLC v. Stevens, No. 08 CVS 4304, 2008

WL 3846174, at *7 (N.C. Super. Ct. Aug. 18, 2008) (quoting Phelps-Dickson Builders, L.L.C. v.

Amerimann Partners, 172 N.C. App. 427, 617 S.E.2d 664, 671 (2005)). "Generally, proof of an

independent tort is sufficient to make out a separate [§ 75-1.1] claim," id. (citations omitted), and

§ 75-1.1(b) provides that " 'commerce' includes all business activities, however denominated,

but does not include professional services rendered by a member of a learned profession."

Having found Mason liable under § 1-538.2 for the tort of embezzlement, the Court

concludes that Mason's conduct fits the description of an unfair and deceptive practice

prohibited by § 75-1.1. The action in question was in or affecting commerce, Mason is not a

member of a learned profession under § 75-1.1(b), and Vector was injured by Mason's

concealment of and ultimate failure to tender amounts owed to Vector. As such, the Court rules

that Vector has established the elements for its claim under § 75-1.1.

### D. Damages

Mason's contention that she was entitled to 15% of the total amount collected from

American Care (as opposed to 15% from the amounts received from Attorney Landsman) is not

reasonable based on the record. While there was no formal written agreement that outlined

Mason's commission, Mason signed five separate letters that stated she deducted 15% of the

$1,125.00 received from Attorney Landsman ($168.75) and that the remaining $956.25 was

being tendered to Vector. Mason sent five different checks for $956.25 to Vector on five

different dates. If they do not amount to a memorialization of Mason's agreement with Vector,

the checks and accompanying letters sent by Mason confirm a course of performance that

establishes Mason's 15% commission was to be deducted from amounts received from the

Landsman Firm after Attorney Landsman had deducted his 25% from the total amount received

from American Care. See Peaseley v. Va. Iron, Coal & Coke Co., 282 N.C. 585, 194 S.E.2d 133,

144 (1973) ("The best evidence of the intention of the parties to a contract is the practical

interpretation given to their contracts by the parties while engaged in their performance."). As

such, Mason's commission was based on the sums that she received from the Landsman Firm,

and Mason is liable to Vector for actual damages in the amount of $37,599.75.

In the complaint and the Amended Motion for Summary Judgment, Vector requested

punitive damages under § 1-538.2 and treble damages pursuant to § 75-16. However,

N.C. GEN. STAT. § 1D-10 provides that Chapter 1D of the North Carolina General Statutes

applies to any claim for punitive damages, and N.C. GEN. STAT. § 1D-20 mandates that a

claimant must chose between punitive damages and another remedy for multiple damages

provided by a statute, such as treble damages. At the January 6, 2017 hearing, Vector elected to

pursue treble damages in lieu of punitive damages. Section 75-16 provides that a successful claimant shall be entitled to treble damages without qualification, so Vector is entitled to treble damages of $112,799.25.

### E.  Attorney's Fees

The award of attorney's fees pursuant to North Carolina law is within the sound discretion of the trial judge and is not reviewable except for abuse of discretion. See Willen v. Hewson, 174 N.C. App. 714, 622 S.E.2d 187, 193 (2005) (citation omitted) (ruling that an award of attorney's fees pursuant to N.C. GEN. STAT. § 75-16.1 was still subject to the trial court's discretion even though the claimant was entitled to the recovery of attorney's fees under the statute). A claimant entitled to recover damages under N.C. GEN. STAT. § 1-538.2 is also entitled to recover attorney's fees, so Vector is entitled to recover its attorney's fees by virtue of its embezzlement claim.[5] As far as the amount of the fees, the Court concludes that the $27,000.00 as outlined in the Halpern Declaration (Doc. No. 20-2) and the $6,424.66 as outlined in the Wells Declaration (Doc. 20-4) are reasonable requests for attorney's fees in light of Vector's efforts to collect in state court and in this adversary proceeding. Vector, therefore, is awarded the total sum of $33,424.66 for its attorney's fees related to this case.

### F.  Dischargeability

Section 523(a)(4) of the Bankruptcy Code states that a discharge under § 727 of Title 11 does not discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The Court concludes that Mason's embezzlement establishes a basis for denying dischargeability of Vector's claim under § 523(a)(4). In addition, Vector's claims for

---

[5] Section 75-16.1 also provides for an award of attorney's fees for a successful claimant, but the claimant must show that the liable party willfully engaged "in the act or practice" and that "there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of the suit." Vector offered no evidence of any negotiations or Mason's conduct relating thereto, so there is no basis to award attorney's fees under Chapter 75 of the North Carolina General Statutes.

treble damages and for attorney's fees are also non-dischargeable as these claims are based on

Mason's embezzlement. <u>See</u> <u>Cohen v. de la Cruz</u>, 523 U.S. 213, 223 (1998) (ruling that treble

damages and attorney's fees provided for under New Jersey law for fraudulent conduct were

non-dischargeable pursuant to § 523(a)(2)(A)).

## CONCLUSION

As there is no genuine issue of material fact in regard to Vector's claims, the Amended

Motion for Summary Judgment is **GRANTED**. Vector is entitled to actual damages in the

amount of $37,599.75 from Mason. Pursuant to N.C. GEN. STAT. § 75-16, the Court shall treble

the damages such that the money award shall be for the principal sum of $112,799.25. Vector

shall also recover attorney's fees in the amount of $33,424.66. Lastly, the amounts owed for

damages and attorney's fees are nondischargeable under 11 U.S.C. § 523(a)(4).

**SO ORDERED**.

This Order has been signed                                          United States Bankruptcy Court
electronically. The Judge's
signature and Court's seal
appear at the top of the Order.